UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
(SOUTHERN DIVISION)

| | |
|---|---|
| THE ESTATE OF RYAN LeROUX, *et al.* | * |
| *Plaintiffs* | * |
| v. | *   Case No. 8:22-cv-00856-AAQ |
| MONTGOMERY COUNTY, MARYLAND, *et al.* | * |
| | * |
| *Defendants* | |
| | * |

**MEMORANDUM OPINION AND ORDER**

This is a case concerning the death of a man with a mental disability who was shot by Montgomery County Police Officers. Pending before the Court is the last remaining portion of Plaintiffs' Motion to Compel, ECF No. 74, which sought four separate Internal Affairs memoranda as part of discovery in this case. On January 24, 2024, the Court held an evidentiary hearing on this issue, as well as the other issues raised in Plaintiffs' Motion to Compel. ECF No. 83. On February 16, 2024, upon the Court's request, Defendants submitted the two Internal Affairs memoranda relating specifically to this case. Having reviewed these memoranda and the relevant authorities, this last remaining portion of Plaintiffs' Motion to Compel is granted, in part, and denied, in part, as outlined below.

**BACKGROUND**

The facts of this case, as alleged, are recounted in detail in this Court's Memorandum Opinion of March 20, 2023, granting, in part, and denying, in part, Defendants' Motion to Dismiss. ECF No. 51. Accordingly, this Opinion will focus on the facts as they relate to the present dispute.

1

As noted above, this case arises out of Montgomery County Police Department ("MCPD") officers' shooting of Ryan Nicholas LeRoux on July 16, 2021. *See* ECF No. 25, at 17. Upon the denial of Defendants' Motion to Dismiss, the Court entered a Scheduling Order governing discovery in this case. ECF No. 62.

Plaintiffs served their first Request for Production of Documents on Defendant Montgomery County on July 6, 2023. ECF No. 74-1, at 1. Among other materials, Plaintiffs sought documents and communications related to the shooting in question. *Id.* at 2. On August 30, 2023, Defendants produced documents in response to the requests, as well as a privilege log, which included the two internal memoranda regarding the shooting which are presently in dispute. *Id.* Although the parties held a telephonic meet and confer, the parties could not reach agreement on whether the two memoranda were discoverable. ECF No. 74, at 1. Additionally, Plaintiffs sought documents regarding "past complaints or grievances, investigations, and/or settlements against MCPD officers related to improper responses to people with disabilities or people in mental health crises." ECF No. 74-1, at 2. Defendants initially failed to produce any documents regarding this subject matter. *Id.* at 11.

On October 25, 2023, Plaintiffs served their Motion to Compel on Defendants, contesting, among other things, Defendants' failure to produce the two Internal Affairs memoranda relating to the incident in question, ECF No. 74-1, at 18, 23, as well as Defendants' failure to produce any documents in response to their demand for documents and other communications regarding other similar incidents, *id.* at 11. On November 13, 2023, Defendants served their Opposition to Plaintiffs' Motion on Plaintiffs. ECF No. 74, at 1. Regarding the two Internal Affairs memoranda concerning Mr. LeRoux's shooting, Defendants asserted that: 1) the deliberative process privilege protected both memoranda; and 2) the attorney-client privilege protected only the second

memorandum which encapsulated the work of the Internal Investigation Review Panel ("IIRP"). *See* ECF No. 74-2, at 11-14. Regarding the request for documents concerning other similar incidents, Defendants conceded that they had uncovered materials regarding two other incidents, but argued that the responsive materials contained sensitive information and were not relevant to the case. *Id.* at 9-10. Defendants provided their Supplemental Responses and Third Supplemental Production on November 15, 2023. ECF No. 74, at 1. Plaintiffs served their Reply on Defendants on December 4, 2023. *Id.* On December 14, 2023, these materials were jointly provided to the Court alerting it of a discovery dispute in this case. *See id.* at 1-2; ECF No. 74-1; ECF No. 74-2; ECF No. 74-3. The following day, the Court scheduled a hearing on the dispute. ECF No. 77. On December 22, 2023, Defendants additionally provided a Sur-Reply in support of their Opposition. ECF No. 80.

On January 24, 2024, the Court held a discovery hearing on the pending dispute. ECF No. 83. In addition to several other matters, the Court heard from the parties as to the memoranda and materials presently in dispute. The Court reserved judgment on the two Internal Affairs memoranda pending a written decision. ECF No. 84, at 3. Regarding the documents concerning the two similar but distinct incidents, the Court concluded that the materials were relevant, but ordered Defendants to redact individual information from the materials to address Defendants' privacy concerns. *Id.* at 2. On February 9, 2024, the Court ordered Defendants to provide the two Internal Affairs memoranda regarding Mr. LeRoux's shooting for an in-camera review. ECF No. 85. On February 16, 2024, Defendants provided these two memoranda.[1]

A few general words regarding the substance and structure of these two memoranda are necessary to explain the Court's decision. The first memorandum, dated February 20, 2023

---

[1] The Court thanks Defendants for their prompt compliance with the Court's Order.

("February 20th Memorandum"), is from the Director of the Montgomery County Internal Affairs Division to the Commander of the Montgomery County Sixth District Police Department. The Memorandum opens with a synopsis of the Complaint; then lists various allegations that have been made against the officers involved in Mr. LeRoux's death. With regard to each allegation, the Memorandum lists the allegation, the officer(s) against whom the allegation was made, the evidence the investigation uncovered, and the conclusion as to whether the officer(s) violated the relevant principle.

The second memorandum, dated February 28, 2023 ("February 28th Memorandum"), is from the Director of the Internal Affairs Division to the Internal Affairs File and encapsulates the work of the IIRP related to Mr. LeRoux's shooting. The entirety of the Memorandum is six sentences. It recounts the individuals who were present for the IIRP, which is encapsulated in one sentence, and the results of the meeting, which is encapsulated in two sentences. The three other sentences describe administrative matters. Although an attorney is listed as having been present at the meeting, neither the attorney, nor anything they said or that was said to them is discussed in the Memorandum. The importance of the Memorandum arises from the inclusion of the IIRP's final conclusion as to whether the officers violated departmental rules.

## LEGAL STANDARD

Federal Rule of Civil Procedure 37(a) "authorizes the basic motion for enforcing discovery obligations." 8B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2285 (3d ed. 2023). Where a party fails to answer a request for production of documents or an interrogatory, the Rule allows the opposing party to move for an order compelling an answer. Fed. R. Civ. P. 37(a)(3)(B)(iii)-(iv). The moving party must certify in the motion that it has conferred, or attempted to confer, in good faith with opposing counsel in an effort to obtain the desired

material without court involvement. Fed. R. Civ. P. 37(a)(1). District courts enjoy "substantial discretion in managing discovery," including granting or denying motions to compel. *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 929 (4th Cir. 1995).

## ANALYSIS

Defendants contest release of the memoranda on two separate grounds: the deliberative process privilege and the attorney-client privilege. Review of the memoranda reveals that the February 20th Memorandum can be easily redacted to ensure that any arguably privileged portions are shielded from disclosure. Likewise, review of the February 28th Memorandum reveals that it is not subject to either privilege.

### I. Deliberative Process Privilege

There is no binding legal authority on the application of deliberative process privilege in the Fourth Circuit. *Stone v. Trump*, 356 F. Supp. 3d 505, 515 (D. Md. 2018). Making this more complicated, "prior cases 'are of limited help . . . because the deliberative process privilege is so' fact-specific." *NAACP v. Bureau of Census*, 401 F. Supp. 3d 608, 612 (D. Md. 2019) (omission in original) (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 867 (D.C. Cir. 1980)). As the Fourth Circuit has explained:

> In part because the strength of the government's interest varies with each "deliberative process," and because the privilege is only qualified, the case law has developed incrementally and, perhaps, inconsistently. As the Supreme Court noted in an early case construing the Freedom of Information Act, drawing lines "between what may be withheld and what must be disclosed is not without difficulties" since "the rules governing discovery in such litigation have remained uncertain from the very beginnings of the Republic." As Judge Friendly noted, this is a "masterpiece of understatement."

*Cipollone v. Liggett Grp., Inc.*, 812 F.2d 1400, 1987 WL 36515, at *2 (4th Cir. Feb. 13, 1987) (per curiam) (unpublished table decision) (internal citations omitted) (first quoting *EPA v. Mink*, 410

U.S. 73, 86 (1973); and then quoting *Lead Indus. Ass'n v. Occupational Safety & Health Admin.*, 610 F.2d 70, 82 (2d Cir. 1979)); *see also id.* ("It follows that each assertion of the privilege must be checked against the details of the deliberative process and the role of the documents to that process."). "Nonetheless, an examination of other cases illustrates how courts have analyzed the privilege under similar circumstances." *NAACP*, 401 F. Supp. 3d at 612; *see also Stone*, 356 F. Supp. 3d at 515 (noting that despite the lack of binding Fourth Circuit precedent, unpublished Fourth Circuit cases addressing the privilege provide helpful guidance).

When a case is in federal court based on federal question jurisdiction, federal common law governs assertions of executive privilege. *Pulte Home Corp. v. Montgomery County*, No. GJH-14-3955, 2017 WL 2361167, at *2 (D. Md. May 31, 2017); *Jones v. Murphy*, 256 F.R.D. 510, 515 n.5 (D. Md. 2008) (applying federal common law to claims of executive privilege "because the state [of Maryland] and federal laws of executive privilege do not conflict" and are "substantially similar"). The deliberative process privilege protects "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975)). "The central purpose of the privilege is to foster government decision[-]making by protecting it from the chill of potential disclosure." *In re Subpoena Duces Tecum Served on the Off. of the Comptroller of the Currency*, 145 F.3d 1422, 1424 (D.C. Cir. 1998). It provides "assur[ance] that subordinates within an agency will feel free to provide the decisionmaker with their uninhibited opinions and recommendations without fear of later being subject to public ridicule or criticism." *Coastal States Gas Corp.*, 617 F.2d at 866.

However, as at least one court has suggested, "it is not at all clear . . . that the basic assumption that informs this body of law is well-made." *Kelly v. City of San Jose*, 114 F.R.D. 653, 659 (N.D. Cal. 1987). This concern has been echoed by this and other courts when considering similar arguments regarding other privileges, as well. *See Robinson v. Pytlewski*, No. 8:19-cv-1025-DLB, 2022 WL 4095355, at *7 (D. Md. Sept. 7, 2022) ("The medical peer review privilege assumes that if medical peer review committees are left to themselves the lack of transparency will provide space for them to self-correct. What has been seen in the correctional context in multiple states, given the little other meaningful oversight, is that the lack of transparency, instead of allowing space for self-correction, provides a sheath to let the same mistakes repeat themselves over time." (internal citation omitted)). This is particularly so when the case involves a matter of public concern. *See Virmani v. Novant Health Inc.*, 259 F.3d 284, 291 (4th Cir. 2001) (refusing to recognize the privilege in a discrimination case because, among other things, "if a plaintiff succeeds in a discrimination case, he advances important public interests in addition to his personal interests"); *see also Mem'l Hosp. for McHenry Cnty. v. Shadur*, 664 F.2d 1058, 1062-63 (7th Cir. 1981) (per curiam) (refusing to recognize a privilege for medical disciplinary proceedings in an antitrust case and observing that if the plaintiff were successful in proving his claim, he would "vindicate not only his own right to practice medicine . . . , but also the strong public interest in open and fair competition which is embodied in the Sherman Act under which the case arises," *id.* at 1062). For example, as one court has stated:

> The "deliberative process" privilege, closely related to the self-critical analysis privilege, is also inappropriate for use in civil rights cases against police departments. The deliberative process privilege should be invoked only in the context of communications designed to directly contribute to the formulation of important public policy. "So limited, this privilege would offer no protection at all to most of the kinds of information police departments routinely generate." Both the internal affairs investigations as well as the records of

>witness/police officer statements are of the type that would be routinely generated by Defendants.

*Soto v. City of Concord*, 162 F.R.D. 603, 612-13 (N.D. Cal. 1995) (internal citations omitted) (first citing *Kelly*, 114 F.R.D. at 659; and then quoting *id.*); *see also Williams v. City of Boston*, 213 F.R.D. 99, 102 (D. Mass. 2003) ("It 'offends basic notions of openness and public confidence in our system of justice' to shield the results of a police department investigation from public scrutiny, as the public's confidence in the workings of the police department is of utmost importance." (quoting *Soto*, 162 F.R.D. at 612)); *Kelly*, 114 F.R.D. at 658 ("[C]ourts could apply the 'deliberative process' privilege to most kinds of information generated by police departments only if they are willing to stretch, in some instances almost beyond recognition, the policy rationale that supports that privilege."); *King v. Conde*, 121 F.R.D. 180, 192-93 (E.D.N.Y. 1988) (discussing factors to be considered in applying privilege, and expressing skepticism that disclosure of internal investigative reports would compromise or chill investigations). Ultimately, as discussed below, the Court need not resolve these disagreements for the purpose of the present Motion.

Courts have made clear that the privilege does not apply in certain circumstances. First, the deliberative process privilege does not apply where "the plaintiff's cause of action is directed at the government's intent." *In re Subpoena Duces Tecum*, 145 F.3d at 1424; *see also Children First Found., Inc. v. Martinez*, No. 1:04-CV-0927, 2007 WL 4344915, at *7 (N.D.N.Y. Dec. 10, 2007) ("[I]f the party's cause of action is directed at the government's intent in rendering its policy decision and closely tied to the underlying litigation then the deliberative process privilege 'evaporates.'" (quoting *In re Subpoena Duces Tecum*, 145 F.3d at 1424)); *Jones v. City of College Park*, 237 F.R.D. 517, 521 (N.D. Ga. 2006) ("[T]he privilege is simply inapplicable, because government intent is at the heart of the issue in this case."); *United States v. Lake Cnty. Bd. of Comm'rs*, 233 F.R.D. 523, 527 (N.D. Ind. 2005) ("[T]he deliberative process privilege does not

apply when the government's intent is at issue."). Second, "[t]he deliberative process privilege does not protect factual information, even if such information is contained in an otherwise protectable document, as long as the information is severable." *Holt v. City of Harrisburg*, No. 1:19-CV-01986, 2021 WL 5233317, at *3 (M.D. Pa. Nov. 10, 2021) (quoting *Redland Soccer Club, Inc. v. Dep't of Army*, 55 F.3d 827, 854 (3d Cir. 1995)); *see also Williams*, 213 F.R.D. at 101 ("[I]t is clear that even when the privilege is said to apply to 'decisions' as well as 'policies,' those decisions must be more than the factual determination at issue in the instant case, and there must be a significant reason to withhold the information."); *United States v. Booz Allen Hamilton Inc.*, No. CCB-22-1603, 2022 WL 3921019, at *3 (D. Md. Aug. 31, 2022) ("Materials containing facts untethered from an employee's 'subjective, personal thoughts on a subject' must be disclosed. . . . Investigation Materials with '"frank" and "candid" comments that might be embarrassing if revealed to the public' lie at the other end of the spectrum. For example, comments connected to an author's subjective views about the general desirability of the Proposed Acquisition may be withheld." (footnote omitted) (internal citations omitted) (first quoting *Coastal States Gas Corp.*, 617 F.2d at 869; and then quoting *NAACP*, 401 F. Supp. 3d at 617)).

A government cannot blankly assert the privilege without support.

> To assert the deliberative process privilege, the government usually must: a) Invoke it through an agency head or her subordinate who is personally knowledgeable about the information sought to be protected; b) Identify the specific information that is protected by the privilege; c) Give reasons for maintaining the confidentiality of the information; d) Demonstrate that the privileged information is both pre-decisional and deliberative.

*Holt*, 2021 WL 5233317, at *3. To qualify for withholding under the deliberative process privilege, a document must be both "pre[-]decisional" and "deliberative." *Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992). A document is pre-decisional if

it was "'prepared in order to assist an agency decisionmaker in arriving at his decision,' rather than to support a decision already made." *Id.* (quoting *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975)). A document is "deliberative" if it "reflects the give-and-take of the consultative process." *Id.* (quoting *Coastal States Gas Corp.*, 617 F.2d at 866). Deliberative material exposes "the manner in which the agency evaluates possible alternative policies or outcomes." *City of Virginia Beach v. U.S. Dep't of Com.*, 995 F.2d 1247, 1253 (4th Cir. 1993); *see also Solers, Inc. v. Internal Revenue Serv.*, 827 F.3d 323, 329 (4th Cir. 2016); *NAACP*, 401 F. Supp. 3d at 611; *see also Jones*, 256 F.R.D. at 516 ("For a communication to be pre[-]decisional, it does not have to be anchored to a specific, discrete, final decision."). "'While the government need not anchor documents to a single discrete decision amidst ongoing deliberative processes,' the Fourth Circuit has warned that 'an overly lax construction of the term "pre[-]decisional" submerges the rule of disclosure under the exemption.'" *Jones*, 256 F.R.D. at 517 (quoting *City of Virginia Beach*, 995 F.2d at 1255). Accordingly, the privilege does not protect "[c]ommunications made subsequent to an agency decision." *Holt*, 2021 WL 5233317, at *3 (alteration in original) (quoting *Redland Soccer Club*, 55 F.3d at 854). Likewise, the privilege does not apply "to documents that embody a final decision, because once a decision has been made, the deliberations are done." *Id.* at *4 (quoting *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 268 (2021)). The privilege "distinguishes between pre[-]decisional, deliberative documents, which are exempt from disclosure, and documents reflecting a final agency decision and the reasons supporting it, which are not." *Id.* (quoting *Sierra Club*, 592 U.S. at 268). Finally, even if these requirements have been met, the deliberative process privilege "should be invoked only in the context of communications designed to directly contribute to the formulation of important public policy." *Soto*, 162 F.R.D. at 612.

10

"In determining whether a document is protected by the deliberative process privilege, courts consider whether the disclosure of that document would be likely to undermine the purposes of the privilege." *NAACP*, 401 F. Supp. 3d at 612.  The principal idea underlying the privilege is that people "contribut[ing] to policy formulation will be less afraid to offer honest (albeit painful) analyses of current and contemplated policies, and will be less shy about suggesting bold, creative (and sometimes hairbrained) policy alternatives, if they know that their work is not likely to be disclosed to the public." *Kelly*, 114 F.R.D. at 658-59 (emphasis omitted).  "Where the contents of a document are 'so candid or personal in nature that public disclosure is likely in the future to stifle honest and frank communication within the agency,' the document is likely to be privileged." *NAACP*, 401 F. Supp. 3d at 612 (quoting *Coastal States Gas Corp.*, 617 F.2d at 866).

Even if the Court determines that the privilege applies, the privilege is not absolute; rather, courts must balance the "public interest in nondisclosure with the need for the information as evidence." *Cipollone*, 1987 WL 36515, at *2 (quoting *Dowd v. Calabrese*, 101 F.R.D. 427, 431 (D.D.C. 1984)).  Thus, "a party's assertion of the deliberative process privilege requires a two-step review." *Holt*, 2021 WL 5233317, at *4 (quoting *Redland Soccer Club*, 55 F.3d at 854).  First, the court must decide whether the communications are privileged, and second, the court must balance the parties' interests in support of their respective positions regarding the documents in dispute. *Id.*

Applying this balancing, courts have routinely found that the interest in disclosure outweighs the interest in privacy in civil rights cases:

> [I]t [is] clear that the policies that inform the federal civil rights laws are profoundly important, public confidence in our system of justice is of comparable significance and is threatened when relevant evidence is not made available, and independent of that public perception of the system there are few things more important than doing justice in fact in individual cases.

11

*Kelly*, 114 F.R.D. at 660-61 (internal citations omitted); *see Williams*, 213 F.R.D. at 102 ("In federal civil rights cases, 'an assertion of privilege must "overcome the fundamental importance of a law meant to insure each citizen from unconstitutional state action."'" (quoting *Mason v. Stock*, 869 F. Supp. 828, 833 (D. Kan. 1994)); *see also Shiflett ex rel. Davenport v. City of San Leandro*, No. 21-cv-07802-LB, 2023 WL 4551077, at *2 (N.D. Cal. July 13, 2023) ("In the context of civil rights suits against police departments, this balancing approach should be moderately pre-weighted in favor of disclosure." (quoting *Soto*, 162 F.R.D. at 613)).

Having reviewed both of the memoranda at issue regarding Mr. LeRoux's shooting, the Court concludes that the privilege does not apply to certain severable portions of the February 20th Memorandum and the entirety of the February 28th Memorandum. Once they have the portions ordered released, if Plaintiffs believe they have a remaining need for the portions of the February 20th Memorandum that have been redacted, they may move the Court for their release, explaining why their interest in these portions outweighs the government's interest in shielding them, particularly given the Court's release of the February 28th Memorandum and portions of the February 20th Memorandum.

### A. The February 20, 2023 Memorandum

The February 20th Memorandum is easily segregable such that the Court orders the release of the portions of the Memorandum containing only factual information or otherwise not including deliberative material. As this Court has explained, "[t]he privilege serves to protect the deliberative process itself, not merely documents containing deliberative material." *NAACP*, 401 F. Supp. 3d at 615 (quoting *Mapother v. Dep't of Just.*, 3 F.3d 1533, 1537 (D.C. Cir. 1993)).

The Memorandum opens with a synopsis of the Complaint, followed by four separate subsections, each investigating a separate departmental rule the officers involved in the shooting

of Mr. LeRoux allegedly violated. Consistent with this Court's prior rulings, the Court orders the release of the portions of the synopsis which recount the incident. Additionally, the Court orders the release of the portions of the four separate subsections containing the facts regarding each separate allegation in the Memorandum. Conversely, the Court will redact the portions of the Memorandum listing the specific allegations that were investigated and the composing officer's analysis and conclusions as to whether the specific departmental rules were violated.

This approach is consistent with the Fourth Circuit's and other courts' approaches to such memoranda. *See Cruz v. Bd. of Supervisors*, 983 F.2d 1055, 1993 WL 2667, at *1 (4th Cir. 1993) (per curiam) (unpublished table decision) (affirming "[t]he magistrate-judge['s] order[] . . . to produce the factual information contained in the internal affairs report of [the county's] investigation into the [plaintiff's] arrest but allow[ing] the county to redact nonfactual information"); *Cipollone*, 1987 WL 36515, at *2 ("One of the rudimentary black letter rules is that while the privilege covers 'opinions' it does not cover 'facts.'"); *Md. Restorative Just. Initiative v. Hogan*, No. 16-01021-ELH, 2017 WL 4280779, at *3 (D. Md. Sept. 27, 2017) ("As to those commutation decisions that have already been made, the Court expects (and the State seems to agree based on its position at oral argument) that the State will produce the portions of the already-decided commutation files that contain only factual information."). As the court explained in *Holt v. City of Harrisburg*, No. 1:19-CV-01986, 2021 WL 5233317 (M.D. Pa. Nov. 10, 2021): "A police officer, when asked the simple question 'What happened?' should not be chilled in his response for fear that the response might someday be made public. Discussing the facts of a particular incident is significantly different than discussing policy about that incident." 2021 WL 5233317, at *5.

Finally, the Court will order the release of the portions of the Memorandum listing the specific departmental rules that the officers allegedly violated. The Court concludes that divorced from the specific allegations as to how these rules were allegedly violated, as well as the author's analysis as to whether the rules were violated, simple statements of law are not "deliberative", that is, standing alone they do not reflect the give and take required for information to be privileged. Furthermore, the Court finds that even if these statements of law alone would be considered deliberative, given the minimal information they reveal regarding the County's analysis, any interest shielding their disclosure is outweighed by the public's interest in ensuring that a sufficient and thorough investigation was conducted – which, in turn, will reduce the possibility that similar incidents occur in the future.

### B. The February 28, 2023 Memorandum

Conversely, the Court orders the production of the entirety of the February 28th Memorandum. As explained above, the Memorandum consists of six sentences, recounting who was present at the meeting of the Internal Affairs Division, the question upon which they voted, and the result of the vote. The Memorandum contains no deliberations. As Defendants concede, they have already released much of this information to Plaintiffs. *See* ECF No. 74-2, at 2-3 (declaring who was present at the IIRP meeting and the results of the meeting).

The Court finds that the Memorandum does not implicate the deliberative process privilege. First, as explained above, the privilege does not apply to the final decisions of an agency, for by definition, they are not pre-decisional. *See Booz Allen Hamilton*, 2022 WL 3921019, at *1 ("Documents are 'pre[-]decisional' if they were generated before the agency's final decision on the matter . . . ." (quoting *Sierra Club*, 592 U.S. at 268)); *Hogan*, 2017 WL 4280779, at *3 ("The State's interest in shielding the deliberative process as it is currently unfolding in real time, along

14

with the interest of the seventeen (17) individuals who await the outcome of that process, outweighs any claim for immediate access to the information that the Plaintiffs have. Once those decisions have been made, the State will produce them as outlined above."). *Compare Williams*, 213 F.R.D. at 101 ("[I]t is clear that [the deliberative process privilege] does not apply to the final Reports of the hearing officers in the instant case."), *with Holt*, 2021 WL 5233317, at *4 (withholding documents where "[f]rom reading the submitted materials [the Court] [did] not know if any officer was disciplined, if any training was done, or if any policy decisions were made").

Second, the report does not include any details regarding the nature of the deliberations, but simply presents a question of which the requesting party was already aware — whether the officers implicated in the shooting violated any departmental rules. Accordingly, neither the document, nor any information within it, can be classified as deliberative. *See Jones*, 256 F.R.D. at 518 ("Deliberative material 'reflects the give-and-take of the consultative process . . . by revealing the manner in which the agency evaluates possible alternative policies or outcomes.' . . . That back-and-forth is critical to a determination that documents and communications are deliberative." (first omission in original) (internal citation omitted) (quoting *City of Virginia Beach*, 995 F.2d at 1253)). As this Court has explained:

> Documents that provide recommendations or alternative suggestions, or which "weigh[] the pros and cons of agency adoption of one viewpoint or another" are likely to be privileged. But if the suggestion contained in a document "is adopted, formally or informally, as the agency position on an issue," or if it is "used by the agency in its dealings with the public," the document may lose its privileged status.

*NAACP*, 401 F. Supp. 3d at 612 (alteration in original) (internal citations omitted) (first quoting *Coastal States Gas Corp.*, 617 F.2d at 866; and then quoting *id.*); *see also EEOC v. Freeman*, 288 F.R.D. 92, 101 (D. Md. 2012) ("Regulations promulgated by the EEOC and published in the CFR

15

cannot themselves be subject to the deliberative process privilege. They are the final, public decisions of the agency and do not reveal the internal communications which occurred during their formulation.").

## II. Attorney-Client Privilege

Additionally, Defendants generally assert that the attorney-client privilege protects the February 28th Memorandum from disclosure because an attorney was present for the meeting recounted therein. *See* ECF No. 74-2, at 14 ("Additionally, with respect to the IIRP memorandum, the Office of the County Attorney was present at the IIRP meeting as legal counsel. Defendant properly asserted attorney[-]client privilege with respect to the resulting IIRP memorandum."). For the court to determine whether the attorney-client privilege was properly asserted regarding a particular document, the court must determine:

> (1) [T]he asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*Victor Stanley, Inc. v. Creative Pipe, Inc.*, 250 F.R.D. 251, 265 (D. Md. 2008) (quoting *In re Allen*, 106 F.3d 582, 600 (4th Cir. 1997)). "Sometimes the document itself makes this clear, such as when the lawyer writes to the client to provide an opinion and the correspondence reflects that it is a confidential communication." *Id.* However, it is often "impossible to determine if the privilege applies without extrinsic evidence, which must be provided by affidavit, deposition transcript, or other source." *Id.*

The Court rejects Defendants' assertion of the privilege for two reasons. First, it has long been accepted that the mere presence of an attorney does not protect a document or communication from disclosure. *See United States v. Cohn*, 303 F. Supp. 2d 672, 683 (D. Md. 2003) ("Communications are not privileged merely because one of the parties is an attorney or because an attorney was present when the communications were made."); *Melada v. Giant of Md., LLC*, No. 20-01509 PJM, 2023 WL 4273370, at *1 (D. Md. June 28, 2023) (same). The asserting party must establish that there was a communication to the attorney for the purpose of securing legal advice. *See, e.g.*, *Cohn*, 303 F. Supp. 2d at 683-84. Defendants' general assertion of privilege based on the presence of an attorney fails to establish the privilege. Second, a review of the Memorandum confirms that the privilege does not apply. Although the Memorandum notes the presence of counsel, it does not include any communications from or to the counsel, or any other individual member of the committee. The only information that could be characterized as a communication is a single sentence recounting the unanimous decision of the committee to adopt the investigating officer's conclusion.

## CONCLUSION

For the foregoing reasons, the remaining portions of Plaintiff's Motion to Compel shall be granted, in part, and denied, in part. The Court shall provide the parties separately a redacted version of the February 20th Memorandum consistent with its decision above. Additionally, Defendants shall produce an unredacted version of the February 28th Memorandum to the Plaintiffs within fourteen days. To the extent that the parties maintain any similar disputes regarding the materials concerning other similar incidents, they shall be produced, redacted or unredacted, consistent with the Court's decision above.

So ordered.

Date:   April 19, 2024                                              /s/
                                                        Ajmel A. Quereshi
                                                        U.S. Magistrate Judge